**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

| | | |
|---|---|---|
| **RARE BREED TRIGGERS, INC, a Texas corporation,** | ) | CASE NO. 2:25-cv-00852 |
| | ) | |
| **and** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **ABC IP, LLC, a Delaware limited liability company,** | ) | |
| | ) | |
| **Plaintiffs.** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DAIRYLAND DEFENSE SOLUTIONS LLC, a Wisconsin limited liability company,** | ) | |
| | | |
| **and** | | |
| | | |
| **GAVEN L. POCZEKAJ, SR.,** | | |
| | | |
| **Defendants.** | | |

---

**COMPLAINT FOR PATENT INFRINGEMENT AND TRADEMARK INFRINGEMENT**

---

This is an action for patent infringement in which Rare Breed Triggers, Inc. ("Rare Breed") and ABC IP LLC ("ABC") (collectively, "Plaintiffs") accuse Dairyland Defense Solutions, LLC ("Dairyland Defense") and Gaven L. Poczekaj, Sr. (collectively, "Defendants"), of infringing U.S. Patent No. 10,514,223 ("the '223 Patent"); U.S. Patent No. 11,724,003 ("the '003 Patent"), 12,036,336 ("the '336 Patent"), and 12,274,807 ("the '807 Patent) as follows:

## PARTIES

1.       Rare Breed is a corporation organized under the laws of the State of Texas with an address at 2710 Central Fwy, Suite. 150-151, Wichita Falls, TX 76306.

2.       ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, DE 19901.

3.       Upon information and belief, Dairyland Defense is a limited liability company existing under the laws of the state of Wisconsin and has a place of business at 1800 New Pinery Road, Portage, WI 53901, but also lists a principal office at 307 East Jaeger Street, Oxford, WI 53952 in its Wisconsin Secretary of State filings.

4.       Upon information and belief, Gaven L. Poczekaj, Sr. is an individual residing at 307 East Jaeger Street, Oxford, WI 53952, who solely operates and directs the activities of Dairyland Defense, including from his residence.

## JURISDICTION AND VENUE

5.       This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(b), 281, and 284-85.

6.       This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

7.       The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Diversity of citizenship jurisdiction is conferred pursuant to 28 U.S.C. § 1332(a).

8.       Personal jurisdiction and venue over Defendants are proper in this District because all Defendants reside in and/or have a place of business this district.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1400. Defendants reside in this district and/or have a regular and established place of business in this District.

## BACKGROUND

10.     This lawsuit asserts direct infringement of the '223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent. True copies of the '223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent are attached hereto as Exhibits A, B, C, and D, respectively.

11.     The '223 Patent was lawfully and properly issued by the United States Patent and Trademark Office on December 24, 2019.

12.     The '003 Patent was lawfully and properly issued by the United States Patent and Trademark Office on August 15, 2023.

13.     The '336 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024.

14.     The '807 Patent was lawfully and properly issued by the United States Patent and Trademark Office on April 15, 2025.

15.     ABC is the owner by assignment of all right, title and interest in and to the '223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

16.     Upon information and belief, Defendants have committed acts of direct patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

## The Invention

17.     By way of background, a typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern

trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

18.     In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

19.     In contrast. in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

20.     The '223 Patent describes and claims a device in which the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

21.     The '003 Patent, the '336 Patent, and the '807 Patent describe and claim a similarly operating device with the additional feature that allows it to be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) forced reset semiautomatic mode.

22.     The claims of the patents define the scope of the patented invention(s).

## The Infringing Devices

23.     On information and belief, Defendants are currently making, using, selling, and/or offering for sale a forced reset trigger assembly, including with three-position safety selector ("the Infringing Device"), which embodies the technology claimed in the '223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent.

24.     On information and belief, Defendants sold or offered for sale the Infringing Device via the website dairylanddefense.com and promoted sales via Facebook.  Exemplary photographs of the Infringing Device are shown below:

 








25.    The Infringing Devices also can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic modes by moving the safety selector between positions. This feature causes the Infringing Device to be covered by the '223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent.

26.    When the Infringing Device operates in the forced reset mode, the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar/member prevents the trigger member from being pulled again by the user

until the bolt carrier has returned to the in-battery position according to the invention described and claimed in the of the '223 Patent.

27. As claimed in the '003 Patent, the '336 Patent, and the '807 Patent, the Infringing Device has the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) forced reset semiautomatic mode.

28. On information and belief, at least the major components of the Infringing Device are imported from Bosnia.

29. In view of the Defendants' knowledge of the Plaintiffs' patent rights, the infringement is willful.



## <u>COUNT I – DIRECT INFRINGEMENT OF THE '223 PATENT</u>

30. The allegations set forth in paragraphs 1-29 are fully incorporated into this First Count for Relief.

31. Upon information and belief, Defendants have and continue to willfully directly infringe at least Claim 4 of the '223 Patent by making, using, selling, offering for sale, and/or importing without authority within the United States, the Infringing Unit.

32. Because the claims describe the invention as "comprising" the enumerated elements, the scope of the claims are not limited to those elements and the inclusion of additional structures or features not specified in a claim does not avoid infringement.

**33.** An exemplary comparison of the Infringing Unit with claim 4 of the '223 Patent is illustrated in the chart below

| Claim Language | Infringing Unit |
|---|---|
| 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising: | The Infringing Unit is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket.<br><br> |

| | An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled. |
|---|---|
| |  |
| a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins; | The Infringing Unit includes a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins.<br><br> |
| a hammer having a sear notch and mounted in the housing to pivot on a transverse axis between set and released positions; | The Infringing Unit includes a hammer with a sear notch and is mounted in the housing to pivot on a transverse axis between set and released positions. |



| | |
|---|---|
| a trigger member having a sear and mounted in the housing to pivot on a transverse axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, the contact causing the trigger member to be forced to the set position; | The Infringing Unit includes a trigger member with a sear and that is mounted in the housing to pivot on a transverse axis between set and released positions.<br><br>The trigger member has a surface (shown below) positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled.<br><br><br><br>The contact causes the trigger member to be forced to the set position. |

| a locking bar pivotally mounted in the housing and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position, and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position in which the trigger member can be moved by an external force to the released position. | The Infringing Unit includes a locking bar that is pivotally mounted in the housing.<br><br><br><br>The locking bar is spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position.<br><br>The locking bar is movable against the spring bias to a second position when contacted by the bolt carrier reaches a substantially in-battery position. In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position. |

34.     Accordingly, Defendants' sale and/or offer to sell the Infringing Unit is direct infringement under 35 U.S.C. § 271(a).

35.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Unit is a direct infringement of the '223 Patent.

36.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

37.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II – DIRECT INFRINGEMENT OF THE '003 PATENT

38.     The allegations set forth in paragraphs 1-37 are fully incorporated into this Second Count for Relief.

39.     Upon information and belief, Defendants have and continues to willfully directly infringe at least Claim 4 of the '003 Patent by making, using, selling, offering for sale, and/or importing without authority within the United States, the Infringing Unit.

40.     An exemplary comparison of the Infringing Unit with claim 4 of the '003 Patent is illustrated in the chart below:

| Claim Language | Infringing Unit |
|---|---|
| 4. A firearm trigger mechanism comprising: | The Infringing Unit is a firearm trigger mechanism. |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Infringing Unit includes a housing that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin. |

|  |  |
|---|---|
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The Infringing Unit includes a hammer that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier.<br><br> |

a trigger member having a sear and mounted in said housing to pivot on said trigger member pin between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position,



The Infringing Unit includes a trigger member that has a sear and is mounted in the housing to pivot on the trigger member pin between set and released positions. The trigger member has a surface positioned to be contacted by a surface of said hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position.



wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out

The sear and sear catch are in engagement in the hammer and trigger member set positions and are out of engagement in the hammer and trigger member released positions.

| | |
|---|---|
| of engagement in said released positions of said hammer and trigger member, | |
| a disconnector having a hook for engaging said hammer and mounted in said housing to pivot on said trigger member pin, | <br><br>The Infringing Unit includes a disconnector that has a hook for engaging the hammer and is mounted in the housing to pivot on the trigger member pin. |
| a locking member mounted in said housing to pivot on a transverse locking member pin, said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | <br><br>The Infringing Unit includes a locking member mounted in the housing to pivot on a transverse locking member pin. The locking member is pivotable between a first position at which it |

| | mechanically blocks the trigger member from moving to the released position and a second position at which it does not mechanically block the trigger member, allowing the trigger member to be moved to the released position. The locking member is spring biased toward the first position and is moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position |
|---|---|
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Infringing Unit includes a safety selector mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions.<br><br> |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | When in the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward | When in the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer, causing the |

| | |
|---|---|
| pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | trigger member to be forced to the set position. The safety selector prevents the disconnector hook from catching the hammer hook. Thereafter, when the bolt carrier reaches the substantially in-battery position, the user can pull the trigger member to fire the firearm without manually releasing the trigger member. |

41. Accordingly, Defendants' sale and/or offer to sell the Infringing Unit is direct infringement under 35 U.S.C. § 271(a).

42. Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Unit is a direct infringement of the '003 Patent.

43. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

44. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT III – DIRECT INFRINGEMENT OF THE '336 PATENT

45. The allegations set forth in paragraphs 1-44 are fully incorporated into this Third Count for Relief.

46. Upon information and belief, Defendants have and continues to willfully directly infringe at least Claim 3 of the '336 Patent by making, using, selling, offering for sale, and/or importing without authority within the United States, the Infringing Unit.

47. An exemplary comparison of the Infringing Unit with claim 3 of the '336 Patent is illustrated in the chart below.

| Claim Language | Infringing Unit |
| --- | --- |
| 3. A firearm trigger mechanism comprising: | The Infringing unit is firearm trigger mechanism. |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | <br><br>The Infringing Unit includes a housing that has first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin. |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, |  |

| | The Infringing Unit includes a hammer that has a sear catch and a hook for engaging a disconnector and mounted in the housing to pivot on the hammer pin between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier |
|---|---|
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, |  The Infringing Unit includes a trigger member that has a sear and is mounted in the housing to pivot on the trigger member pin between set and released positions.  |

| | The trigger member has a surface positioned to be contacted by a surface of the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position. |
|---|---|
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member. |
| a disconnector having a hook for engaging said hammer and mounted in said housing to pivot on said trigger member pin, | <br><br>The Infringing Unit includes a disconnector that has a hook for engaging the hammer and mounted in the housing to pivot on the trigger member pin. |

a locking member mounted in said housing to pivot on a transverse locking member pin, said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and



The Infringing Unit includes a locking member mounted in the housing to pivot on a transverse locking member pin. The locking member is pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member, allowing the trigger member to be moved to the released position. The locking member is spring biased toward the first position and adapted to be moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position.

a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook,



| | The Infringing Unit includes a safety selector that is mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. The safety selector is configured such that, when said safety selector is in the forced reset semi-automatic position, it causes the disconnector to be repositioned and in doing so prevents the disconnector hook from catching the hammer hook. |
|---|---|
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | When in the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches said hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When in the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer, causing the trigger member to be forced to the set position. The safety selector prevents the disconnector hook from catching the hammer hook. Thereafter, when the bolt carrier reaches the substantially in-battery position, the user can pull the trigger member to fire the firearm without manually releasing the trigger member. |

48.     Accordingly, Defendant's sale and/or offer to sell the Infringing Unit is direct infringement under 35 U.S.C. § 271(a).

49.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Unit is a direct infringement of the '336 Patent.

50.     Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

51.     Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT IV – DIRECT INFRINGEMENT OF THE '807 PATENT

52.     The allegations set forth in paragraphs 1-51 are fully incorporated into this Fourth Count for Relief.

53.     Upon information and belief, Defendants have and continue to willfully directly infringe at least claim 1 of the '807 Patent by making, using, selling, offering for sale, and/or importing without authority within the United States, the Infringing Unit.

54.     An exemplary comparison of the Infringing Unit with claim 1 of the '807 Patent is illustrated in the chart below

| Claim Language | Infringing Unit |
|---|---|
| 1. A firearm trigger mechanism comprising: | The Infringing unit is firearm trigger mechanism. |

| | |
|---|---|
| a hammer having a sear catch and a hook and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | <br><br>The Infringing Unit includes a hammer that has a sear catch and a hook and is mounted in housing that fits into a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions. The hammer pivots rearward by rearward movement of a bolt carrier. |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | <br><br>The Infringing Unit includes a trigger member that has a sear and is mounted in a housing that fits into a fire control mechanism pocket to pivot on a |

| | transverse trigger member pivot axis between set and released positions. |
|---|---|
| |  |
| | The trigger member has a surface positioned to be contacted by a surface of said hammer during rearward pivoting of the hammer to cause said trigger member to be forced to the set position. |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member. |

| | |
|---|---|
| a disconnector having a hook for engaging said hammer hook and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | 

The Infringing Unit includes a disconnector that has a hook for engaging the hammer hook and is mounted in a housing that fits into the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, which it shares with the trigger member. |
| a locking member adapted to be movably mounted in the fire control mechanism pocket, said locking member being movable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | 

The Infringing Unit includes a locking member that is movably mounted in a housing that fits into the fire control mechanism pocket. The locking member is movable between a first position at which the locking member mechanically blocks |

| | the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member, allowing said trigger member to be moved to the released position. The locking member is spring biased toward the first position and is moved against said spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |
|---|---|
| a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions, |  The Infringing Unit includes a safety selector that is movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions. |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release said trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to their set positions so that the user can pull the trigger member to fire the firearm. |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward | In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer, causing the |

| | |
|---|---|
| pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | trigger member to be forced to the set position, the safety selector prevents the disconnector hook from catching the hammer hook. Thereafter, when the bolt carrier reaches the substantially in-battery position, the user can pull the trigger member to fire the firearm without manually releasing said trigger member. |

55.     Accordingly, Defendants' sale and/or offer to sell the Infringing Unit is direct infringement under 35 U.S.C. § 271(a).

56.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Unit is a direct infringement of the '807 Patent.

57.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

58.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a.     A judgment in favor of Plaintiffs that Defendants have infringed the '223 Patent;

b.     A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the

infringement of the '223 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

c.      A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '223 Patent, or other such equitable relief as the Court determines is warranted;

d.      A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '223 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement;

e.      A judgment in favor of Plaintiffs that Defendants have infringed the '003 Patent;

f.      A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '003 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

g.      A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '003 Patent, or other such equitable relief as the Court determines is warranted;

h. A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '003 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement;

i. A judgment in favor of Plaintiffs that Defendants have infringed the '336 Patent;

j. A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '336 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

k. A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '336 Patent, or other such equitable relief as the Court determines is warranted;

l. A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '336 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement;

m. A judgment in favor of Plaintiffs that Defendants have infringed the '807 Patent;

n. A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the

infringement of the '807 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

      o.      A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '807 Patent, or other such equitable relief as the Court determines is warranted;

      p.      A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '807 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement; and

      **q.**      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.


DATED: June 13, 2025

                        Respectfully submitted,

                        /Glenn D. Bellamy/
                        Glenn D. Bellamy (Ohio Bar No. 0070321)
                          E-mail: gbellamy@whe-law.com
                          Tel: (513) 707-0243
                        Wood Herron & Evans LLP
                        600 Vine Street, Suite 2800
                        Cincinnati OH 45202

                        *Attorneys for Plaintiffs*